Quinn, J.
(dissenting). Sometime long prior to the dates when the tenants in these nonpayment proceedings moved into the basement apartments, numbered 37 and 39, they now occupy at 344 W. 72nd St., the landlord had created these apartments by altering into residential accommodations an area of the basement originally designed for use as storage space. At the time of altering the basement area, now comprising these apartments, the landlord did not file any specifications or plans for the residential accommodations created and has not filed any such specifications or plans since. This failure to file and obtain approval of specifications and plans was then, and continuously has been, and is now, a violation of the Multiple Dwelling Law (§ 300); and until such specifications and plans are filed and approved to legalize the alteration, resulting in tenants’ apartments, the building will not be certified by the New York City Housing and Development Administration as lawfully occupied. In the absence of a certificate of occupancy no rent accrues and the landlord is barred from maintaining any action or summary proceeding for nonpayment of rent. It is this defense under sections 300, 301 and 302 of the Multiple Dwelling Law which tenants interpose and which defeats these nonpayment proceedings. (3 Rasch, N. Y. Landlord and Tenant Law [2d ed.], § 1319, p. 128.)
It is not the tenants in clinging to the accommodations provided, who are the cause of the illegal occupancy. It is the landlord’s long-continued intransigency in having put the tenants into possession of housing accommodation, but in refusing to file specifications and plans with the Housing and Development Administration, fully delineating the unauthorized alterations long-ago surreptitiously made, creating these very housing accommodations, which results in the violation of law and denial of a certificate of occupancy. (Carmel v. Appleton, 122 N. Y. S. 2d 195 and 127 N. Y. S. 2d 268 [App. Term, 1st Dept.].) The records of the Housing and Development Administration, in evidence, specifying the violation, clearly so state: “ 300, 301, 302 M/D law file plans and obtain a certificate of occupancy to legalize the following alteration * * * cellar * * * storage rooms altered to Apt. 37 (and 39) ”.
The department or agency of the city having jurisdiction has not found the tenants ’ occupancy to be illegal by reason of any act or omission or situation caused or created by the tenants so as to warrant the issuance of an order requiring the tenants to vacate, as envisaged by section Y51-6.0 (subd. a, par. [3]) of the Administrative Code of the City of New York (as amd. *301 by Local Laws, 1970, No. 30, known as the City Bent, and Behabilitation Law) and subdivision c of section 52 of the City Bent, Eviction and Rehabilitation Regulations.
“It would be judicially unconscionable to characterize the tenant’s occupation of the premises as illegal, since it is rendered so only because of the landlord’s breach of his own obligation.” (2 Basch N. Y., Landlord and Tenant. [2d ed.], § 1108, pp. 545-546.) As was said by this court in 816 Fifth Ave. v. Purdy (127 N. Y. S. 2d 695, 696): “ The evidence establishes that the very conditions now complained of by the landlord and resulting in the violations forming the basis of this proceeding resulted solely from the affirmative acts of and were created by the landlord and its predecessor, and the landlord may not utilize these acts and conditions as a basis for a claim of illegal occupancy of the apartment by the tenant. These conditions and the violations are capable of removal by the landlord and the burden and duty with respect thereto rest on the landlord.”
There is no evidence to suggest that it would be unduly burdensome or economically improvident for landlord to file plans now, to remove the violation,which its own unauthorized alteration effected, and thus obtain a certificate of occupancy. (See McDonnell v. Sir Prize Contr. Corp., 32 A D 2d 660; Matter of K & G Co. v. Reyes, 52 Misc 2d 606, 609.)
The order of the rent commission fixing the maximum rent for these controlled apartments has no bearing whatever on the question of whether or not the occupancy is illegal and, if so, who caused it and has the responsibility of correcting it.
The rent commission has unquestioned, exclusive, original jurisdiction to determine whether or not housing accommodations are rent-controlled and, if so, the lawful maximum rent for such accommodation. The rent commission’s determination of those questions (in the absence of reversal on review in an article 78 proceeding in the Supreme Court) is binding on the courts and collaterally unassailable. The rent commission’s determinations of those questions in this case are not assailed; indeed they are embraced by the tenants. However, the collectibility of the lawful maximum rent, i.e., the questions of whether or not the lawful maximum rent fixed by the rent commission is due and payable and what defenses, if any, are available to a tenant, including those provided under the Multiple Dwelling Law, are strictly for the courts.
Tenants’ pursuit of their remedies under the rent control statutes and regulations to establish the status of these premises as rent-controlled accommodations and fix a lawful maximum *302 rent, is not inconsistent with the defense in these nonpayment proceedings designed to impel action to remove the illegal condition which landlord created and has persistently maintained. These are not holdover proceedings seeking to evict the tenants on the ground that their continued occupancy is a violation of law exposing the landlord to criminal penalties. But even if they were, the landlord could not succeed. (McDonnell v. Sir Prisze Constr. Corp., 32 A D 2d 660, supra; 816 Fifth Ave. v. Purdy, 127 N. Y. S. 2d 695, supra; Matter of K & G Co. v. Reyes, 52 Misc 2d 606, supra.)
The provisions of the Multiple Dwelling Law, such as the defenses here interposed, affording tenants a method of self help in the enforcement of that law, are implicitly unwaivable, even by consensual agreement, as a matter of public policy in effecting the express legislative purpose to guard the general health and safety against abuses in the maintenance of multiple dwellings. (See Multiple Dwelling Law, §§ 2 and 304; cf. Real Property Actions and Proceedings Law, § 780.)
If the dictates of public policy forbid an express consensual waiver by tenants of these provisions of the Multiple Dwelling Law, then certainly the law will not indulge any fiction of non-consensual waiver by election of inconsistent remedies or estoppel to despoil the tenants of these salutary legislative protections.
Trial Term’s dismissal of tenants’ defenses, on the ground that it is “ tenants who are themselves blocking the issuance of a Certificate of Occupancy ”, is without support in the evidence and contrary to law. The judgment should be reversed and the petitions dismissed.
Markowitz, P. J., and Frank, J., concur in Per Curiam opinion; Quinn, J., dissents in memorandum.
Final judgments and order affirmed, with $25 costs.